IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| WILLIAM HENDERSON, | ) | CASE NO. 5:15-cv-00292 |
| | ) | |
| Petitioner, | ) | JUDGE JEFFREY J. HELMICK |
| | ) | |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| JASON BUNTING, Warden, | ) | KATHLEEN B. BURKE |
| | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |
| | ) | |

Petitioner William Henderson ("Petitioner" or "Henderson"), acting *pro se*, filed this habeas corpus action pursuant to 28 U.S.C. § 2254 ("Petition").  Doc. 1.  Henderson challenges the constitutionality of his conviction and sentence in *State of Ohio v. Henderson*, Case No. 02-CR-0070 (Wayne County).  Doc. 1.

This matter has been referred to the undersigned Magistrate Judge pursuant to Local Rule 72.2.  For the reasons set forth herein, the undersigned recommends that the Court **DISMISS** Henderson's Petition (Doc. 1) as time-barred and/or because all of his grounds for relief present issues of state law which are not cognizable on federal habeas review.  Further, the undersigned recommends that the Court **DENY** Henderson's motion for a stay and abeyance (Doc. 16).

## I.  Procedural Background

### A.    State Conviction and Sentencing

On April 18, 2002, a Wayne County grand jury indicted Henderson on two counts of aggravated murder, each having two capital offense specifications (Counts 1 and 2); one count of aggravated arson (Count 3); one count of aggravated robbery (Count 4), one count of aggravated

burglary (Count 5), and one count of violating a protection order or consent agreement (Count 6).[1]  Doc. 13-1, pp. 4-5, 149.  On April 26, 2002, Henderson pleaded not guilty to all counts. Doc. 13-1, p. 6.  On June 20, 2002, through his attorneys, Henderson filed a "Constitutional Motion to Dismiss" seeking dismissal of the portions of the aggravated murder indictment that elevated the potential penalty from life imprisonment to death.  Doc. 13-1, pp. 7-56.  The State opposed Henderson's motion to dismiss.  Doc. 13-1, pp. 57-64.  On October 3, 2002, the trial court found Henderson's motion to dismiss not well-taken and overruled the motion.  Doc. 13-1, pp. 65-72.

Henderson, through counsel, waived his right to a trial by jury and consented to have his case heard and decided by a three-judge panel with the understanding that the State had agreed not to seek the death penalty.[2]  Doc. 13-1, p. 73.  On November 27, 2002,[3] Henderson pleaded guilty to Counts 2 through 6.[4]  Doc. 13-1, pp. 74-77.  The three-judge trial court panel sentenced Henderson to life imprisonment without eligibility for parole for the offense of aggravated murder; ten years in prison for each of the offenses of aggravated arson, aggravated robbery, and aggravated burglary, with the sentences to run concurrently with each other and concurrently with Henderson's aggravated murder sentence; and six months in prison for the offense of

---

[1] The victim was Rita V. Henderson, Henderson's estranged wife.  *See* Doc. 13-1, pp. 4-5 (Indictment identifying victim as Rita V. Henderson); Doc. 13-1, p. 119 (Brief of Appellee State of Ohio relating to Henderson's post-conviction proceedings).  As discussed below, Henderson did not file a direct appeal.  Thus, there is no court of appeals' opinion discussing the underlying facts.

[2] The Waiver of Jury was journalized on December 2, 2002.  Doc. 13-1, p. 73.

[3] The Judgment Entry of Change of Pleas and Sentencing in a Capital Case was journalized on December 3, 2002. Doc. 13-1, pp. 74, 77.

[4] On motion of the State of Ohio, in consideration of Henderson's guilty plea as to other Counts and upon the understanding and stipulation of the parties that Henderson should be sentenced to imprisonment for life without possibility of parole, the trial court dismissed Count 1 – aggravated murder with specifications.  Doc. 13-1, pp. 74-77.

violating a protection order or consent decree, with the sentence to run concurrently with all other sentences.  Doc. 13-1, p. 76.

Henderson did not file a direct appeal in the state appellate court or the Ohio Supreme Court.

**B.     Post-conviction proceedings**

On June 17, 2013, more than ten years after his conviction and sentence, Henderson, acting *pro se*, filed a Motion to Vacate and Set Aside Sentence, raising the following claims:

1. Trial court erred in not convening a three-judge panel and making separate findings pursuant to Ohio Revised Code 2929.03(F), 2945.06, and Criminal Rule 11(C)(3).

2. Trial court failed to properly impose post-release control pursuant to Ohio Revised Code 2967.28.

3. Trial court erred in sentencing to a non-minimum sentence for first time offender.

Doc. 13-1, pp. 78-86.   Henderson's motion to vacate was granted as it pertained to imposition of post-release control and, on August 22, 2013, a three-judge panel proceeded to re-sentence Henderson.[5]  Doc. 13-1, pp. 87-90; Doc. 13-2, p. 3.    During the re-sentencing hearing, Judge Spitler, one of the three-judge panel judges, informed Henderson as follows:

> \*\*\*
>
> Keep in mind that case law indicates that the only part of your sentence that's being vacated is the fact that you were not advised of the post release control warning, that we cannot do anything to change the sentence that was imposed at your original sentencing.
>
> \*\*\*
>
> As I indicated to you the case law indicated that you have to be brought back for re-sentencing.  We cannot change the terms of

---

[5] A corresponding journal entry reflecting the error in the original sentencing was journalized on August 30, 2013. Doc. 13-1, p. 91.

your original sentence.  All we can do is add the additional warning about post release control.  That what the case law says.

***

If you haven't had the post release control warning given, given to you even though you've received a life sentence, it is incumbent upon the Court to give you that warning since you were convicted of some other offenses as well.

***

That part of the sentence is that fact that we didn't impose, a mandatory portion of your sentence was advising you of post release control.  The fact that that was absent is the only part that is being voided, that has to be corrected.

***

I granted it as far as the post release control is concerned . . .

Doc. 13-2, pp. 5-6.

On September 17, 2013, Henderson, acting *pro se*, filed a notice of appeal in the Ninth District Court of Appeals from the Judgment Entry of Change of Pleas and Sentencing in a Capital Case, which was journalized on August 30, 2013.  Doc. 13-1, pp. 92-111.  Henderson raised the following assignments of error:

1. Trial court erreed [sic] in not convening a three-judge panel and making separate findings pursuant to Ohio Revised Code 2929.03(F), 2945.06, and Criminal Rule 11(C)(3).

2. Trial court failed to properly impose post-release control pursuant to Ohio Revised Code 2967.28.

3. Trial court erred in sentencing to a non-minimum sentence for a first time offender.

4. Trial court erred for failing to determine the number of days of confinement owed before sentence was imposed.

Doc. 13-1, pp. 98-105.

The State of Ohio filed its appellate brief.  Doc. 13-1, pp. 112-134.   On January 28, 2014, Henderson filed a Motion in Response to the State's brief (Doc. 13-1, pp. 135-138), which the Ninth District Court of Appeals ordered stricken, finding that it was not filed in compliance with the local rules of the Ninth District Court of Appeals (Doc. 13-1, pp. 139-142).  Henderson made additional filings in support of his appeal after the court ordered that his January 28, 2014, reply brief be stricken.  Doc. 13-1, pp. 143-148.

On June 30, 2014,[6] the Ninth District Court of Appeals rendered a decision vacating the judgment of the Wayne County Court of Common Pleas and concluding that the trial court's 2002 sentencing entry remained in effect.  Doc. 13-1, pp. 149-154.   The Ninth District Court of Appeals stated in part:

> {¶ 9} Here, the trial court's failure to properly impose statutorily mandated post-release control at Henderson's 2002 sentencing resulted in "that *part* of the sentence" being void. *Fischer* at ¶ 26. The doctrine of res judicata applies to the other aspects of Henderson's 2002 convictions that are unrelated to post-release control, including the determination of guilt and the lawful elements of the original sentence. *Id.* at paragraph three of the syllabus. It follows that the scope of Henderson's current appeal from the resentencing hearing is limited to issues relating to post-release control. *Id.* at paragraph four of the syllabus. At the time Henderson filed his motion to vacate in June 2013, he had already been in prison for more than ten years. Thus, because Henderson had already served the ten-year sentences on each of the first-degree felony offenses that would have warranted the imposition of post-release control, the trial court was without authority to hold a resentencing hearing to correct the post-release control error. *Bloomer* at ¶ 70. It follows that it was improper for the trial court to impose a term of post-release control on Henderson at the 2013 resentencing hearing.
>
> {¶ 10} To the extent the trial court imposed a term of post-release term [sic] at the 2013 resentencing hearing, the judgment must be vacated. The trial court properly determined that it was without authority to entertain challenges to the remaining portions of Henderson's 2002 sentence, including the imposition of a life sentence without the possibility of parole for the aggravated murder conviction. The trial court's 2002 sentencing entry remains in effect.

---

[6] The Ninth District Court of Appeals' Decision and Journal Entry is dated June 30, 2014, and was journalized on July 1, 2014.  Doc. 13-1, p. 149.

*State v. Henderson*, 2014-Ohio-2854, ¶¶ 9-10, 2014 WL 2957497, * 2-3; Doc. 13-1, pp. 152-153.

On August 14, 2014, Henderson, acting *pro se*, filed a Notice of Appeal and Memorandum in Support of Jurisdiction with the Supreme Court of Ohio.  Doc. 13-1, pp. 155-167.  In his Memorandum in Support of Jurisdiction, Henderson raised the following propositions of law:

1.  Trial court erred in not convening a three-judge panel <u>and</u> making separate findings pursuant to the Ohio Revised Code and Criminal Rule 11(C)(3) denying appellant his right to due process and his right to equal protection.

2.  Trial court erred by limiting resentence to just the proper imposition of post-release control rather than conducting a new sentencing hearing.

3.  Trial court erred in sentencing to a non-minimum sentence for a first time offender denying appellant his right to due process and equal protection.

4.  Trial court erred for failing to determine the number of days of confinement owed before sentence was imposed denying appellant his right to due process and equal protection of the law.

Doc. 13-1, pp. 162-166 (emphasis in original).

On September 2, 2014, the State filed a Waiver of Memorandum in Response.  Doc. 13-1, p. 168.  On December 24, 2014, the Supreme Court of Ohio declined jurisdiction of Henderson's appeal.  Doc. 13-1, p. 169.

**C.    Federal Habeas Corpus**

On February 13, 2015, Henderson, acting *pro se*, filed his habeas Petition (Doc. 1) along with a Memorandum in Support (Doc. 1-2) asserting four grounds for relief.[7]  On February 9, 2016, Respondent filed a Return of Writ.  Doc. 13.  On April 25, 2016, Henderson filed a Traverse Brief and Request to Hold this Action in Abeyance for Exhaustion of State Remedies.  Doc. 16.  On April 28, 2016, Respondent filed a Reply to Henderson's Traverse and Request to

---

[7] In his Petition, Henderson states that he placed his Petition in the prison mailing system on February 9, 2015.  Doc. 1, p. 13.

Stay and Abey.  Doc. 17.  On June 10, 2016, Henderson filed a Response to Respondent's

Reply.[8]  Doc. 18.

### III.  Law and Analysis

Respondent argues that Henderson's Petition is untimely and barred by the statute of

limitations.  Alternatively, Respondent argues that Henderson's claims are not cognizable

because he raises only issue of state law and/or he waived and/or procedurally defaulted any

federal constitutional claims because he failed to comply with state procedural rules and/or

entered a voluntary guilty plea.

### A.  Standard of Review under AEDPA

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No.

104-132, 110 Stat. 1214 ("AEDPA"), apply to petitions filed after the effective date of the

AEDPA.  *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007).  In particular, the controlling

AEDPA provision states:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable
>     application of, clearly established Federal law, as determined by the Supreme
>     Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the
>     facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  "A decision is 'contrary to' clearly established federal law when 'the state

court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law

---

[8] Henderson's Response filed on June 10, 2016, amounts to a sur-reply.  Although Henderson did not seek leave to
file a sur-reply, Respondent has not objected to the filing.  Considering Henderson's pro se status and the lack of
objection by Respondent, the undersigned has considered Henderson's Response.

or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)).  "A state court's adjudication only results in an 'unreasonable application' of clearly established federal law when 'the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id*. at 599-600 (quoting *Williams*, 529 U.S. at 413).  "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).  "The state court's application of clearly established law must be objectively unreasonable." *Id.*

In order to obtain federal habeas corpus relief, a petitioner must establish that the state court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Bobby v. Dixon*, 132 S. Ct. 26, 27 (2011) (quoting *Harrington v. Richter*, 131 S. Ct. 770, 786–87 (2011).  This bar is "difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Richter*, 131 S. Ct. at 786 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).  In short, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id*. (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The petitioner carries the burden of proof. *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).

**B.     AEDPA statute of limitations**

The Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), 28 U.S.C. §

2244, limits the time within which a person in custody pursuant to the judgment of a state court

may file a petition for a federal writ of habeas corpus and provides, in relevant part:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of
> habeas corpus by a person in custody pursuant to the judgment of a State court.
> The limitation shall run from the latest of --
>
>> (A)   the date on which the judgment became final by the conclusion of
>> direct review or the expiration of the time for seeking such review;
>
>> (B)   the date on which the impediment to filing an application created by
>> State action in violation of the Constitution or laws of the United States
>> is removed, if the applicant was prevented from filing by such State
>> action;
>
>> (C)   the date on which the constitutional right asserted was initially
>> recognized by the Supreme Court, if the right has been newly
>> recognized by the Supreme Court and made retroactively applicable to
>> cases on collateral review; or
>
>> (D)   the date on which the factual predicate of the claim or claims presented
>> could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or
> other collateral review with respect to the pertinent judgment or claim is pending
> shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

**C.     Exhaustion and procedural default**

A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted

all available remedies in state court.  28 U.S.C. § 2254(b)(1)(A).  A state defendant with federal

constitutional claims must fairly present those claims to the state courts before raising them in a

federal habeas corpus action.  28 U.S.C. § 2254(b), (c); *Anderson v. Harless*, 459 U.S. 4, 6

(1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)) ("[f]ederal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts").  In order to satisfy the fair presentation requirement, a habeas petitioner must present both the factual and legal underpinnings of his claims to the state courts.[9]  *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  This means that the petitioner must present his claims to the state courts as federal constitutional issues and not merely as issues arising under state law.  *See, e.g.*, *Franklin v. Rose*, 811 F.2d 322, 324-325 (6th Cir. 1987); *Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir. 1987).   Further, a constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).

Additionally, a petitioner must meet certain procedural requirements in order to have his claims reviewed in federal court.  *Smith v. Ohio Dep't of Rehab. & Corr.,* 463 F.3d 426, 430 (6th Cir. 2006).  "Procedural barriers, such as . . . rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim."  *Daniels v. United States*, 532 U.S. 374, 381 (2001).  Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts.  *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).  Failure to exhaust applies where state remedies are "still available at the time of the federal petition."  *Id.* at 806 (quoting *Engle v. Isaac*, 456 U.S. 107,

---

[9] In determining whether a petitioner presented his claim in such a way as to alert the state courts to its federal nature, a federal habeas court should consider whether the petitioner: (1) relied on federal cases employing constitutional analysis; (2) relied on state cases employing constitutional analysis; (3) phrased the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleged facts well within the mainstream of constitutional law.  *McMeans,* 228 F.3d at 681.

125 n.28 (1982)).  In contrast, where state court remedies are no longer available, procedural default rather than exhaustion applies.  *Williams*, 460 F.3d at 806.

Procedural default may occur in two ways.  *Williams*, 460 F.3d at 806.  First, a petitioner procedurally defaults a claim if he fails "to comply with state procedural rules in presenting his claim to the appropriate state court."[10] *Id.*  Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'"  *Williams*, 460 F.3d at 806 (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)); *see also  Baston v. Bagley*, 282 F.Supp.2d 655, 661 (N.D.Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."); *see also State v. Moreland*, 50 Ohio St.3d 58, 62 (1990)(failure to present a claim to a state court of appeals constituted a waiver).   "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted."  *Williams*, 460 F.3d at 806.  While the exhaustion requirement is technically satisfied because there are no longer any state remedies available to the petitioner, *see Coleman v. Thompson,* 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review.  *Williams,* 460 F.3d at 806.

To overcome a procedural bar, a petitioner must show cause for the default and actual prejudice that resulted from the alleged violation of federal law or that there will be a

---

[10] In *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986), the Sixth Circuit provided four prongs of analysis to be used when determining whether a claim is barred on habeas corpus review due to a petitioner's failure to comply with a state procedural rule: (1) whether there is a state procedural rule applicable to petitioner's claim and whether petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error. *See also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

fundamental miscarriage of justice if the claims are not considered.  *Coleman*, 501 U.S. at 750.

"'[C]ause' under the cause and prejudice test must be something external to the petitioner,

something that cannot be fairly attributed to him."  *Id.* at 753.  "[T]he existence of cause for a

procedural default must ordinarily turn on whether the prisoner can show that some objective

factor external to the defense impeded counsel's efforts to comply with the State's procedural

rule."  *Id.*  "A fundamental miscarriage of justice results from the conviction of one who is

'actually innocent.'"  *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v.

Carrier*, 477 U.S. 478, 496 (1986).

**D.     Grounds for Relief**

Henderson's grounds for relief are:[11]

**Ground One:**  Trial court erred in not convening a three-judge panel and making separate findings pursuant to Ohio Revised Code 2929.03(F) and Criminal Rule 11(C)(3) denying appellant his right to due process and his right to equal protection of the law.

**Ground Two:**  Trial court erred by limiting resentence to just the proper imposition of post-release control rather than conducting a new sentencing hearing denying appellant his right to due process and his right to equal protection of the law.

**Ground Three:**  Trial court erred in sentencing to a non-minimum sentence for a first time offender denying appellant his right to due process and his right to equal protection of the law.

**Ground Four:**  Trial court erred in failing to determine the number of days of confinement owed before sentence was imposed denying appellant his right to due process and his right to equal protection of the law.

Doc. 1, pp. 6-9, Doc. 1-2, pp. 1-5.

---

[11] For each ground for relief, Henderson includes the same or similar supporting facts along with a separate argument for each ground for relief.  Doc. 1, pp. 6-9, Doc. 1-2, pp. 1-5.  The supporting facts and legal arguments are not reproduced herein.

### 1. Statute of Limitations

Respondent argues that the Henderson's Petition should be dismissed because it is time barred by the statute of limitations set forth in 28 U.S.C. § 2244(d)(1)(A), which makes the starting date for the running of the statute of limitations the date Henderson's conviction became final.  Doc. 13, pp. 11-13.  Henderson was convicted and sentenced on December 3, 2002, and did not file a direct appeal in the Ninth District Court of Appeals within the thirty day period provided for in Ohio Appellate Rule 4(A).  Henderson was re-sentenced on August 30, 2013, for the purpose of imposing statutorily mandated post-control.[12]  Doc. 13-1, pp. 87-91.  Henderson took an appeal from that judgment entry to the Ninth District Court of Appeals.  Doc. 13-1, p. 92.  Since Henderson had already served the ten-year sentences that would have warranted imposition of post-release control, the Ninth District Court of Appeals vacated the August 30, 2013, judgment which imposed a term of post-release control.  Doc. 13-1, p. 152, ¶¶ 9-10.  The Ninth District Court of Appeals also determined that the trial court had properly concluded that it was without authority to entertain Henderson's challenges to the remaining portions of the 2002 sentence.  Doc. 13-1, pp. 152-153, ¶ 10.  Henderson took an appeal to the Supreme Court of Ohio.  Doc. 13-1, pp. 155-156.  On December 24, 2014, the Supreme Court of Ohio declined to accept jurisdiction of the appeal.  Doc. 13-1, p. 169.  Henderson did not seek certiorari in the United States Supreme Court.

Henderson filed his Petition with this Court on February 13, 2015.  Doc. 1.   In his Petition, Henderson certified that he placed his Petition in the prison mailing system on February 9, 2015.  Doc. 1, p. 13.  "Under the mailbox rule, a habeas petition is deemed filed when the

---

[12] The re-sentencing hearing occurred on August 22, 2013.  Doc. 13-1, pp. 87-91.  The entry was journalized on August 30, 2013.  Doc. 13-1, pp. 87-91.

prisoner gives the petition to prison officials for filing in the federal courts." *Cook v. Stegall,* 295 F.3d 517, 521 (6th Cir. 2002) (citing *Houston v. Lack,* 487 U.S. 266, 273 (1988)).  Thus, Henderson's Petition is deemed filed as of February 9, 2015.

If the original December 3, 2002, sentencing decision is used for calculating the statute of limitations under § 2244(d)(1)(A), Henderson's Petition was not timely filed because Henderson's conviction became final on the day his appellate filing deadline expired, i.e., January 2, 2003, and the one-year AEDPA statute of limitations started to run the next day, i.e., January 3, 2003, and expired one-year later on January 3, 2004.[13]  Doc. 13, p. 13.   In contrast, if the August 30, 2013, re-sentencing decision is used to calculate the statute of limitations under § 2244(d)(1)(A), Henderson's Petition would not be time-barred because Henderson's conviction became final on the day his appellate filing deadline expired, i.e., March 24, 2015, when the 90-day time limit expired for him to file a petition for writ of certiorari with the United States Supreme Court.  Thus, the one-year AEDPA statute of limitations would start running on March 25, 2015, and expire one year later on March 25, 2016.  Thus, whether Henderson's Petition is timely is dependent upon the date of the judgment, i.e., the December 3, 2002, entry or the August 30, 2013, entry.

In 2007, in determining whether a petitioner had filed a "second or successive" habeas petition, the Supreme Court considered the issue of when a judgment is final under § 2244(d)(1)(a), concluding that "[f]inal judgment in a criminal case means sentence.  The sentence is the judgment."  *Burton v. Stewart*, 549 U.S. 147, 156 (2007).   Thus, the Supreme Court held that "Burton's limitation period did not begin to run until both his conviction *and* sentence became final by the conclusion of direct review or the expiration of the time for seeking

---

[13] Respondent notes that January 3, 2004, was a Monday.  Doc. 13, p. 13.  Therefore, Henderson had until January 5, 2004, to timely file his federal habeas petition.  Fed. R. Civ. P. 6(a)(1)(C).

14

such review[.]"  *Id.* at 156-157 (emphasis in original).  Four months after *Burton* was decided,

without discussing *Burton*, the Sixth Circuit in *Bachman v. Bagley*, 487 F.3d 979, 984 (6th Cir.

2007) concluded that courts should determine the start of the one-year AEDPA statute of

limitations period based on the content of a petitioner's claim. As a result, the court in *Bachman*,

determined that "Bachman's designation as a sexual predator started the running of a nee[new]

statute of limitations with respect to challenges to the sexual predator designation *only* . . . —not

with respect to challenges to his underlying conviction, such as those raised in the habeas

petition at issue[.]" *Id*. at 983.

      In light of *Burton*, some courts within the Sixth Circuit have questioned the continued

viability of *Bachman*'s "claim-by-claim approach under which the beginning of the one-year

period is based on the content of a petitioner's claim." *See Simmons v. Gansheimer*, 2011 WL

2456678, * 7, n. 4 (N.D. Ohio June 16, 2011); *see also Craddock v. Shewalter*, 2011 WL

8075891, 17 * (N.D. Ohio Nov. 18, 2011) *report and recommendation adopted* 2012 WL

2285171 (June 18, 2012).   Other courts have concluded that *Burton* and *Bachman* are not

inconsistent.  *See Cunningham v. Kelly*, 2014 WL 4103927, * 7-8 (N.D. Ohio Aug. 12, 2014)

(adopting report and recommendation which concluded that *Bachman* remained valid and

binding authority where the petitioner's conviction and sentence had been affirmed on direct

appeal and was only vacated on collateral review); *see also Mackey v. Warden, Lebanon*

*Correctional Inst.*, 525 Fed.Appx. 537 (6th Cir. May 9, 2013) (unpublished) (distinguishing

*Burton* on the basis that the petitioner in *Burton* had obtained appellate vacation of his sentence

whereas the petitioner in *Mackey* had received a *de novo* resentencing to correct a technical error,

which in Mackey's case was imposition of post-release control).  Also, in 2013, a Sixth Circuit

panel recognized *Burton* but concluded that "not every modification that can be made to a

sentence *automatically* restarts the statute of limitations." *Eberle v. Warden, Mansfield Correctional Inst.*, 532 Fed. Appx. 605, * 610 (6th Cir. Aug. 8, 2013) (unpublished) (emphasis in original) (concluding that alterations made by reviewing court to petitioner's sentence regarding post-release control did not restart the AEDPA statute of limitations).

The undersigned agrees with those cases that have concluded that certain factual circumstances may distinguish a petitioner's resentencing from the resentencing in *Burton* such that a resentencing may not restart the AEDPA statute of limitations for all claims. Additionally, the undersigned finds that Henderson's case is distinguishable from *Burton* and that his 2013 resentencing did not serve to restart the AEDPA statute of limitations for all challenges to his December 3, 2002, conviction and sentence. As discussed above, Henderson's 2013 resentencing did not occur as a result of a direct appeal. Rather, the trial court ordered resentencing for imposition of a technical correction to his sentence, i.e., imposition of post-release control. Furthermore, the Ninth District Court of Appeals vacated the later August 30, 2013, re-sentencing entry and ruled that the 2002 sentencing entry remained in effect. Doc. 13-1, p. 153, ¶ 11. Moreover, Henderson makes clear in his filings in this habeas proceeding that "it is ultimately this petitioner's 2002 sentence and plea which petitioner feels are unconstitutional and that he wishes to challenge in this court." Doc. 16-1, p. 2. Accordingly, the undersigned concludes that, absent statutory or equitable tolling, Grounds One, Three and Four are subject to dismissal since those claims should have been filed on or before January 3, 2004, to be timely under AEDPA. In Ground Two, Henderson arguably raises a challenge to the imposition of post-release control which occurred during resentencing. Thus, Ground Two is not barred by the statute of limitations.

Even if this Court does not find this case distinguishable from *Burton* and concludes that Henderson's entire Petition was timely filed, for the reasons set forth below, the undersigned recommends that Henderson's Petition be dismissed because Henderson raises state law issues in his Petition that are not cognizable on federal habeas review.

### a.  Henderson is not entitled to statutory tolling of the statute of limitations

The statute of limitations is tolled for any period of time in which a properly filed petition for post-conviction relief is pending before the state courts.  *Jurado v. Burt,* 337 F.3d 638, 640 (6th Cir. 2003).  "[A]n application is pending so long as the ordinary state collateral review process is 'in continuance.'"  *Carey v. Saffold*, 536 U.S. 214, 219-220 (2002).  "In other words, until the application has achieved a final resolution through the State's post-conviction procedures, by definition it remains 'pending.'"  *Id.* at 220.  This statutory tolling provision, however, does not "revive the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run.  Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations."  *Vroman v. Brigano,* 346 F.3d 598, 602 (6th Cir. 2003) (internal quotations and citation omitted).

During the period from January 3, 2003, the date that Henderson's conviction became final, to January 3, 2004, the expiration of the one-year statute of limitation, Henderson did not file an application for post-conviction or other collateral review.  It was not until June 2013, after the expiration of the AEDPA statute of limitations, that Henderson filed a post-conviction petition in state court seeking to vacate and set aside his sentence.  Doc. 13-1, p. 78.  Since Henderson's post-conviction filings were all filed after the expiration of the statute of limitations, those filings did not toll the statute of limitations under 28 U.S.C. § 2244(d)(2).  *See Vroman*, *supra*.

### b.  Henderson is not entitled to equitable tolling of the statute of limitations

AEDPA's statute of limitations is subject to equitable tolling.  *Hall v. Warden, Lebanon Corr. Inst*., 662 F.3d 745, 749 (6th Cir. 2011) (citing *Holland v. Florida*, ___ U.S.___, 130 S.Ct. 2549, 2560, 177 L.Ed.2d 130 (2010)).  Equitable tolling allows courts to review time-barred habeas petitions "provided that 'a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control.'"  *Robinson v. Easterling*, 424 Fed. Appx.  439, 442 (6th Cir. 2011), *cert. denied*, ___U.S.___, 132 S.Ct. 456, 181 L.Ed.2d 297 (2011) (quoting *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010)).  There are two forms of equitable tolling: (1) *traditional* equitable tolling; and (2) *actual innocence* equitable tolling.  As discussed below, a petitioner, by satisfying the *Holland* two-part test, may be entitled to traditional equitable tolling.  Additionally, a petitioner may be entitled to actual innocence equitable tolling.  However, for the reasons set forth below, Henderson is entitled to neither form of equitable tolling.

### i.  Henderson is not entitled to traditional equitable tolling

A habeas petitioner is entitled to equitable tolling only if he establishes that (1) "he has been pursuing his rights diligently;" and (2) "some extraordinary circumstance stood in his way and prevented timely filing."  *Holland*, 130 S.Ct. at 2562.  Equitable tolling is "applied sparingly" and is evaluated on a case-by-case basis, with the petitioner retaining the "ultimate burden of persuading the court that he or she is entitled to equitable tolling."  *Ata v. Scutt,* 662 F.3d 736, 741 (6th Cir. 2011) (internal quotations and citations omitted).

Henderson has not demonstrated that he diligently pursued his rights in order to warrant equitable tolling. As reasons for delaying, Henderson claims he received ineffective assistance of counsel, was unaware of his right to file a direct appeal, and he was unable to forgive himself for

his actions for years.  Doc. 16-1.  Even assuming *arguendo* that he was unaware of his right to appeal, he was aware he could seek relief pro se and did in fact seek relief in state court by way of a motion to vacate and set aside his sentence.  Doc. 13-1, p. 78.  Further, Henderson does not claim that he was ignorant of his ability to file a federal habeas petition.  Additionally, to the extent that Henderson claims that his pro se status impeded his ability to proceed properly or act with the requisite degree of diligence, a petitioner's pro se status is insufficient in itself to warrant the equitable tolling of the statute of limitations *See Hall*, 662 F.3d at 751-752.

### ii. Henderson is not entitled to actual innocence equitable tolling

In addition to equitable tolling under the traditional two-part test outlined above, "a petitioner may also be eligible for equitable tolling if he demonstrates actual innocence, so that by refusing to consider his petition due to timeliness the court would cause a fundamental miscarriage of justice."  *Patterson v. Lafler*, 455 Fed. Appx. 606, 609 (6th Cir. 2012).  "A valid claim of actual innocence requires '*new* reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial."  *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)) (emphasis supplied).  "The evidence must demonstrate factual innocence, not mere legal insufficiency."  *Id.* (citing *Bousley v. United States*, 523 U.S. 614, 623 (1998)).  The Supreme Court has underscored the fact that "the miscarriage of justice exception . . . applies to a *severely confined category*: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted the petitioner.'"  *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1933 (2013) (quoting *Schulp*, 513 U.S. at 329) (emphasis supplied).

Henderson's guilty plea along with his own statements made in his filings in this case, i.e., "This petitioner does not dispute his guilt" (Doc. 16-1, p. 1), belie any claim of actual innocence.

For the reasons set forth above, the undersigned concludes that Henderson's Petition with respect to Grounds One, Three and Four was not timely filed and he is not entitled to equitable tolling of the statute of limitations under either traditional or actual innocence equitable tolling principles.  Thus, the undersigned recommends that the Court dismiss Grounds One, Three and Four of Henderson's Petition as barred by the statute of limitations.

Since Henderson arguably raises a challenge to the imposition of post-release control during resentencing in Ground Two, the undersigned does not recommend dismissal of Ground Two based on statute of limitations.  However, as discussed below, the undersigned does recommend dismissal of Ground Two because, like in Grounds One, Three and Four, in Ground Two Henderson raises issues of state law that are not cognizable on federal habeas review.

As indicated above, if this Court concludes that Henderson's entire Petition was timely filed under AEDPA, the undersigned recommends that Henderson's Petition be dismissed in its entirety for the reasons set forth below.

### 2.  Henderson's grounds for relief are non-cognizable on federal habeas review

In all his grounds for relief, Henderson challenges the trial court's application of state sentencing laws.  While he uses terms such as "due process" and "equal protection of the law," he does not present federal constitutional arguments.  Rather, he relies on state statutes and state criminal rules of procedure.  Doc. 1-2.  Moreover, he fails to allege or argue that the state court's determination was contrary to or an unreasonable application of clearly established federal law.

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  Instead, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, law, or treaties of the United States." *Estelle*, 502 U.S. at 68.  "A challenge to a state court's interpretation and application of Ohio's sentencing laws is not cognizable in a federal habeas corpus action." *Garrett v. Miller*, 2012 WL 3989022, *3-4 (N.D. Ohio Aug. 13, 2012), *report and recommendation adopted*, 2012 WL 3989004 (N.D. Ohio Sept. 11, 2012) (habeas relief not warranted where petitioner claimed that his due process rights were violated as a result of the imposition of a maximum sentence because petitioner's claim was a challenge to the state court's application of Ohio's sentencing laws and therefore not cognizable on federal habeas review) (citing *Howard v. White*, 2003 WL 22146139, at *2 (6th Cir. Sept.16, 2003)*; Kipen v. Renico,* 2003 WL 21130033 (6th Cir. May 14, 2003)*; Terry v. Trippett,* 62 F.3d 1418, 1995 WL 469424, at *1 (6th Cir.1995) (TABLE, text in WESTLAW) (citing *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir.1988) (per curiam)).

Considering the above, the undersigned concludes that Henderson's grounds for relief challenge the application of Ohio's sentencing laws and therefore they are not cognizable on federal habeas review.[14]  Accordingly, the undersigned recommends that the Court dismiss all grounds for relief.[15]

---

[14] Even if Henderson's pro se Petition was construed liberally to include a federal claim based on an alleged excessive sentence, it would lack merit because the Eighth Amendment contains a "narrow proportionality principle" but it "does not require strict proportionality between crime and sentence."  *U.S. v. Moore*, 643 F.3d 451, 454 (6th Cir. 2011) (citing *Harmelin v. Michigan*, 501 U.S. 957, 996, 1001 (1991) (Kennedy, J., concurring). "[O]nly an extreme disparity between crime and sentence offends the Eighth Amendment."  *Moore*, 643 F.3d at 454 (quoting *United States v. Layne*, 324 F.3d 464, 474 (6th Cir. 2003)).  However, Henderson has not shown that his sentence exceeded the statutory maximum set by statute or that there was an extreme disparity between his sentence and the crime.  Thus, he is unable to demonstrate that the state's interpretation and imposition of its sentencing statutes resulted in a violation of federal constitutional law.  *See Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000) ("A sentence within the statutory maximum set by statute generally does not constitute 'cruel and unusual punishment.'"); *see also United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000) ("only an extreme disparity between crime and sentence offends the Eighth Amendment").

### IV.     Request for Stay and Abeyance

Apparently recognizing the deficiencies in his Petition, Henderson, in response to Respondent's Return of Writ, requests that the Court grant him a stay and abeyance so that he may return to state court to challenge his 2002 guilty plea and sentence.  Doc. 16-1.  Respondent has opposed Henderson's motion.  Doc. 17.

Under *Rhines v. Weber*, 544 U.S. 269 (2005), a district court has discretion to stay a mixed petition, i.e., a petition containing both exhausted and unexhausted claims.  As stated in *Rhines*, however, "[s]taying a federal habeas petition frustrates AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of the federal proceedings [and] . . . undermines AEDPA's goal of streamlining federal habeas proceedings by decreasing a petitioner's incentive to exhaust all his claims in state court prior to filing his habeas petition." *Rhines*, 544 U.S. at 277.  Thus, stay and abeyance is only appropriate in limited instances such as "when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court.  Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless."  *Id.*

Henderson included claims in his Petition directed at his sentence but did not include a claim that his guilty plea was unconstitutional nor has he sought to amend his Petition to include such a claim.  As set forth above, the four grounds for relief based on alleged errors with respect to the trial court's sentencing that were included in Henderson's Petition should be dismissed as time barred or as not cognizable.  Accordingly, since there are no claims remaining, Henderson's

---

[15] Respondent also argues that Henderson procedurally defaulted his grounds for relief because he failed to take a direct appeal from his 2002 conviction and sentence.  Doc. 13, pp. 24-25.  Whether or not Henderson's claims are procedurally defaulted, his claims are not cognizable on federal habeas review.  Accordingly, it is not necessary to assess whether Henderson procedurally defaulted the claims.

motion for a stay and abeyance to pursue a claim not included in his Petition should be

**DENIED**.[16]

Accordingly, for the reasons set forth herein, the undersigned recommends that the Court

**DENY** Henderson's motion for a stay and abeyance (Doc. 16).

## V.        Conclusion and Recommendation

For the reasons stated herein, the undersigned recommends that the Court **DISMISS**

Henderson's Petition as time-barred and/or because all of his grounds for relief present issues of

state law which are not cognizable on federal habeas review.  Further, the undersigned

recommends that the Court **DENY** Henderson's motion for a stay and abeyance.

Dated: August 5, 2016

Kathleen B. Burke
United States Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of
Courts within fourteen (14) days after the party objecting has been served with a copy of this
Report and Recommendation.  Failure to file objections within the specified time may waive the
right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir.
1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

---

[16] Assuming *arguendo* that Henderson had included in his Petition an unexhausted claim regarding his guilty plea,
and his Petition could be considered a mixed petition, he has not demonstrated entitlement to a stay and abeyance
under *Rhines*.  In essence, although Henderson does not dispute his guilt (Doc. 16-1, p. 1), he seeks a do-over.  The
undersigned finds Henderson has not shown that his alleged reasons for not challenging his guilty plea in a more
timely manner, i.e., he was emotionally distraught, unaware of his right to a direct appeal, and/or unaware of the
proper procedure for pursuing his rights (Doc. 16-1), rise to the level of good cause necessary to grant a stay and
abeyance almost 14 years after his conviction.